UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Judith O. Hollinger,<br><br>        Plaintiff,<br><br>  vs.<br><br>California Physicians'<br>Service d.b.a. Blue Shield<br>of California et al.,<br><br>        Defendants. | CV 12-396 RSWL (MRWx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** Re: Defendant Good Samaritan Medical Practice Association, Inc.'s Motion for Summary Judgment and Motion for Attorney Fees **[26]** |

After consideration of Defendant Good Samaritan Medical Practice Association, Inc.'s ("GSMPA") Motion for Summary Judgment and Motion for Attorney Fees [26], this Court makes the following findings of fact and conclusions of law:

### UNCONTROVERTED FACTS

1. Plaintiff Judith Hollinger ("Plaintiff") is the widow of Dr. Glen Hollinger ("Dr. Hollinger"), who died on August 17, 2010, after battling cancer. Compl. ¶¶ 1, 8.

1

2. Dr. Hollinger was the Chief Medical Officer of GSMPA, which is an Independent Physicians Association. Administrative Record ("AR") at 501.

3. As a physician with Good Samaritan Hospital, Dr. Hollinger received health coverage under a Blue Shield Large Group HMO Plan ("the Plan"). AR at 806-869.

4. Dr. Hollinger selected GSMPA as his primary medical group under the Plan. AR at 770.

5. In February 2010, Dr. Hollinger was referred to Excel Diagnostics in Houston, Texas, for cancer treatment involving high dose Indium-III Octreotide therapy. AR at 1005.

6. Excel Diagnostics began administering treatment in March 2010. Id.

7. Initially, Dr. Hollinger paid in cash for the first round of treatment, but then asked sometime in June 2010 that GSMPA assist him with obtaining approval and payment for subsequent treatment from Blue Shield. AR at 501, 1048.

8. Under the Plan, coverage was only available for "medically necessary services," which are defined as:

> [T]hose which have been established as safe and effective and are furnished in accordance with generally accepted professional standards to treat an illness, injury, or medical condition, and which, as determined by Blue Shield, are: (a) consistent with Blue Shield medical policy;

1         and
2         (b) consistent with the symptoms or diagnosis;
3         and
4         (c) not furnished primarily for the convenience
5         of the patient, attending Physician or other
6         provider; and,
7         (d) furnished at the most appropriate level
8         which can be provided safely and effectively to
9         the patient.

AR at 863.

    9. The Plan stated that the medical group or Blue Shield determined whether services are medically necessary. AR at 830.

    10. The Plan did not cover medical services that were "experimental or investigational in nature," which are defined as those treatments "which are not recognized in accordance with generally accepted professional medical standards as being safe and effective for use in the treatment of the illness, injury, or condition at issue." AR at 861.

    11. The Plan also covered therapy provided as part of a clinical trial for cancer. AR at 831.

    12. Under the Plan:

        An approved clinical trial is limited to a trial that is:
        1. Approved by one of the following:
           a. one of the National Institutes of Health;

        b.    the federal Food and Drug Administration, in the form of an investigational new drug application;

        c.    the United States Department of Defense;

        d.    the United States Veterans Administration; or

    2.    Involves a drug that is exempt under federal regulations from a new drug application.

AR at 832.

    13.    The Plan states that in order to receive coverage for participation in a clinical trial (1) the member's Personal Physician must obtain prior authorization and (2) the member has to be accepted into an approved clinical trial for cancer provided that:

        1.    the clinical trial has a therapeutic intent and the Member's treating Physician determines that participation in the clinical trial has a meaningful potential to benefit the Member with a therapeutic intent; and

        2.    the Member's treating Physician recommends participation in the clinical trial; and

        3.    the Hospital and/or Physician conducting the clinical trial is a Plan Provider, unless the protocol for the trial is not

available through a Plan Provider. AR at 831.

14. Under the Plan, Blue Shield was responsible for the costs of the clinical trials and for determining coverage. AR at 359, 386 ("Decision making for cancer clinical trial coverage . . . is Blue Shield's responsibility and is **not delegated** to IPA/medical groups.") (emphasis in original).

15. Further, the Plan states that "Blue Shield shall have the power and discretionary authority to construe and interpret the provisions of the Contract, and determine eligibility to receive benefits under the Contract." AR at 857.

## CONCLUSIONS OF LAW

1. Liability for 29 U.S.C. § 1132(a)(1)(B) depends on the role the defendant played with respect to benefits claims. <u>Cyr v. Reliance Standard Life Ins. Co.</u>, 642 F.3d 1202, 1207 (9th Cir. 2011).

2. GSMPA did not have authority under the Plan to determine benefits for clinical trials, and therefore cannot be liable under 29 U.S.C. § 1132(a)(1)(B).

3. 29 U.S.C. § 1132(g)(1) provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

4. In exercising its discretion, the district court should consider factors among others: (1) the

1  degree of the opposing parties' culpability or bad
2  faith; (2) the ability of the opposing parties to
3  satisfy an award of fees; (3) whether an award of fees
4  against the opposing parties would deter others from
5  acting under similar circumstances; (4) whether the
6  parties requesting fees sought to benefit all
7  participants and beneficiaries of an ERISA plan or to
8  resolve a significant legal question regarding ERISA;
9  and (5) the relative merits of the parties' positions.
10 <u>Hummell v. S. E. Rykoff & Co.</u>, 634 F.2d 446, 453 (9th
11 Cir. 1980).
12     5.   The Court finds that Plaintiff did not act in
13 bad faith by pursuing this Action and Defendant GSMPA
14 is not entitled to attorneys' fees.

**IT IS SO ORDERED.**

DATED: December 11, 2012.

<u>RONALD S.W. LEW</u>
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge