1

2

3

4

5

6

7

8                       **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

11  Judith O. Hollinger,           )   CV 12-396 RSWL (MRWx)
                                    )
12                 Plaintiff,       )
                                    )   **STATEMENT OF**
13      vs.                         )   **UNCONTROVERTED**
                                    )   **FACTS AND CONCLUSIONS**
14                                  )   **OF LAW** Re: Defendant
                                    )   Good Samaritan Medical
15  California Physicians'          )   Practice Association,
    Service d.b.a. Blue Shield      )   Inc.'s Motion for
16  of California et al.,           )   Summary Judgment and
                                    )   Motion for Attorney Fees
17                 Defendants.      )   **[26]**
                                    )
18  _____)

19      After consideration of Defendant Good Samaritan

20  Medical Practice Association, Inc.'s ("GSMPA") Motion

21  for Summary Judgment and Motion for Attorney Fees [26],

22  this Court makes the following findings of fact and

23  conclusions of law:

24                    <u>**UNCONTROVERTED FACTS**</u>

25      1.  Plaintiff Judith Hollinger ("Plaintiff") is the

26  widow of Dr. Glen Hollinger ("Dr. Hollinger"), who died

27  on August 17, 2010, after battling cancer.  Compl. ¶¶

28  1, 8.

                                    1

2.   Dr. Hollinger was the Chief Medical Officer of GSMPA, which is an Independent Physicians Association. Administrative Record ("AR") at 501.

3.   As a physician with Good Samaritan Hospital, Dr. Hollinger received health coverage under a Blue Shield Large Group HMO Plan ("the Plan").  AR at 806-869.

4.   Dr. Hollinger selected GSMPA as his primary medical group under the Plan.  AR at 770.

5.   In February 2010, Dr. Hollinger was referred to Excel Diagnostics in Houston, Texas, for cancer treatment involving high dose Indium-III Octreotide therapy.  AR at 1005.

6.   Excel Diagnostics began administering treatment in March 2010.  Id.

7.   Initially, Dr. Hollinger paid in cash for the first round of treatment, but then asked sometime in June 2010 that GSMPA assist him with obtaining approval and payment for subsequent treatment from Blue Shield. AR at 501, 1048.

8.   Under the Plan, coverage was only available for "medically necessary services," which are defined as:

> [T]hose which have been established as safe and effective and are furnished in accordance with generally accepted professional standards to treat an illness, injury, or medical condition, and which, as determined by Blue Shield, are: (a) consistent with Blue Shield medical policy;

1              and

2              (b) consistent with the symptoms or diagnosis;

3              and

4              (c) not furnished primarily for the convenience

5              of the patient, attending Physician or other

6              provider; and,

7              (d) furnished at the most appropriate level

8              which can be provided safely and effectively to

9              the patient.

10    AR at 863.

11         9.   The Plan stated that the medical group or Blue

12    Shield determined whether services are medically

13    necessary.   AR at 830.

14         10.   The Plan did not cover medical services that

15    were "experimental or investigational in nature," which

16    are defined as those treatments "which are not

17    recognized in accordance with generally accepted

18    professional medical standards as being safe and

19    effective for use in the treatment of the illness,

20    injury, or condition at issue."   AR at 861.

21         11.   The Plan also covered therapy provided as part

22    of a clinical trial for cancer.   AR at 831.

23         12.   Under the Plan:

24              An approved clinical trial is limited to a

25              trial that is:

26              1.   Approved by one of the following:

27                   a.   one of the National Institutes of

28                        Health;

3

           b.   the federal Food and Drug
                Administration, in the form of an
                investigational new drug application;
           c.   the United States Department of
                Defense;
           d.   the United States Veterans
                Administration; or
      2.   Involves a drug that is exempt under
           federal regulations from a new drug
           application.

AR at 832.

    13.  The Plan states that in order to receive coverage for participation in a clinical trial (1) the member's Personal Physician must obtain prior authorization and (2) the member has to be accepted into an approved clinical trial for cancer provided that:

      1.   the clinical trial has a therapeutic
           intent and the Member's treating Physician
           determines that participation in the
           clinical trial has a meaningful potential
           to benefit the Member with a therapeutic
           intent; and
      2.   the Member's treating Physician recommends
           participation in the clinical trial; and
      3.   the Hospital and/or Physician conducting
           the clinical trial is a Plan Provider,
           unless the protocol for the trial is not

1   available through a Plan Provider.

2   AR at 831.

3       14.   Under the Plan, Blue Shield was responsible

4   for the costs of the clinical trials and for

5   determining coverage.  AR at 359, 386 ("Decision making

6   for cancer clinical trial coverage . . . is Blue

7   Shield's responsibility and is **not delegated** to

8   IPA/medical groups.") (emphasis in original).

9       15.   Further, the Plan states that "Blue Shield

10  shall have the power and discretionary authority to

11  construe and interpret the provisions of the Contract,

12  and determine eligibility to receive benefits under the

13  Contract."  AR at 857.

14                  <u>**CONCLUSIONS OF LAW**</u>

15      1.   Liability for 29 U.S.C. § 1132(a)(1)(B) depends

16  on the role the defendant played with respect to

17  benefits claims.  <u>Cyr v. Reliance Standard Life Ins.</u>

18  <u>Co.</u>, 642 F.3d 1202, 1207 (9th Cir. 2011).

19      2.   GSMPA did not have authority under the Plan to

20  determine benefits for clinical trials, and therefore

21  cannot be liable under 29 U.S.C. § 1132(a)(1)(B).

22      3.   29 U.S.C. § 1132(g)(1) provides that "[i]n any

23  action under this subchapter ... by a participant,

24  beneficiary, or fiduciary, the court in its discretion

25  may allow a reasonable attorney's fee and costs of

26  action to either party."

27      4.   In exercising its discretion, the district

28  court should consider factors among others: (1) the

degree of the opposing parties' culpability or bad
faith; (2) the ability of the opposing parties to
satisfy an award of fees; (3) whether an award of fees
against the opposing parties would deter others from
acting under similar circumstances; (4) whether the
parties requesting fees sought to benefit all
participants and beneficiaries of an ERISA plan or to
resolve a significant legal question regarding ERISA;
and (5) the relative merits of the parties' positions.
Hummell v. S. E. Rykoff & Co., 634 F.2d 446, 453 (9th
Cir. 1980).

　　　5.　The Court finds that Plaintiff did not act in
bad faith by pursuing this Action and Defendant GSMPA
is not entitled to attorneys' fees.

**IT IS SO ORDERED.**
DATED: December 11, 2012.


                    RONALD S.W. LEW
                    **HONORABLE RONALD S.W. LEW**
                    Senior, U.S. District Court Judge