UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Judith O. Hollinger,<br><br>        Plaintiff,<br><br>  vs.<br><br><br>California Physicians'<br>Service d.b.a. Blue Shield<br>of California et al.,<br><br>        Defendants. | CV 12-396 RSWL (MRWx)<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW** Re: Defendant Advanced Medical Management, Inc.'s Motion for Summary Judgment and Motion for Attorney Fees **[28]** |

After consideration of Defendant Advanced Medical Management's ("AMM") Motion for Summary Judgment and Motion for Attorney Fees [28], this Court makes the following findings of fact and conclusions of law:

### UNCONTROVERTED FACTS

1. Plaintiff Judith Hollinger ("Plaintiff") is the widow of Dr. Glen Hollinger ("Dr. Hollinger"), who died on August 17, 2010, after battling cancer. Compl. ¶¶ 1, 8.

2. Dr. Hollinger was the Chief Medical Officer of

1

1 Good Samaritan Medical Practice Association ("GSMPA"),
2 which is an Independent Physicians Association.
3 Administrative Record ("AR") at 501.
4     3.  As a physician with Good Samaritan Hospital,
5 Dr. Hollinger received health coverage under a Blue
6 Shield Large Group HMO Plan ("the Plan").  AR at 806-
7 869.
8     4.  Dr. Hollinger selected GSMPA as his primary
9 medical group under the Plan.  AR at 770.
10     5.  Defendant AMM is a medical services
11 organization that provided management and
12 administrative services to Defendant GSMPA.  Def. AMM's
13 Stmt. of Uncontroverted Facts and Conclusions of Law
14 ("AMM SUF") ¶ 1.
15     6.  In February 2010, Dr. Hollinger was referred to
16 Excel Diagnostics in Houston, Texas, for cancer
17 treatment involving high dose Indium-III Octreotide
18 therapy.  AMM SUF ¶ 9.
19     7.  Excel Diagnostics began administering treatment
20 in March 2010.  Id.
21     8.  Initially, Dr. Hollinger paid in cash for the
22 first round of treatment, but then asked sometime in
23 June 2010 that GSMPA assist him with obtaining approval
24 and payment for subsequent treatment from Blue Shield.
25 AR at 501, 1048.
26     9.  Under the Plan, coverage was only available for
27 "medically necessary services," which are defined as:
28         [T]hose which have been established as safe and

```
 1              effective and are furnished in accordance with
 2              generally accepted professional standards to
 3              treat an illness, injury, or medical condition,
 4              and which, as determined by Blue Shield, are:
 5              (a) consistent with Blue Shield medical policy;
 6              and
 7              (b) consistent with the symptoms or diagnosis;
 8              and
 9              (c) not furnished primarily for the convenience
10              of the patient, attending Physician or other
11              provider; and,
12              (d) furnished at the most appropriate level
13              which can be provided safely and effectively to
14              the patient.
```
AR at 863.

10.  The Plan stated that the medical group or Blue Shield determined whether services are medically necessary.  AR at 830.

11.  The Plan did not cover medical services that were "experimental or investigational in nature," which are defined as those treatments "which are not recognized in accordance with generally accepted professional medical standards as being safe and effective for use in the treatment of the illness, injury, or condition at issue."  AR at 861.

12.  The Plan also covered therapy provided as part of a clinical trial for cancer.  AR at 831.

13.  Under the Plan:

1           An approved clinical trial is limited to a
2           trial that is:
3       1.  Approved by one of the following:
4           a.  one of the National Institutes of
5               Health;
6           b.  the federal Food and Drug
7               Administration, in the form of an
8               investigational new drug application;
9           c.  the United States Department of
10              Defense;
11          d.  the United States Veterans
12              Administration; or
13      2.  Involves a drug that is exempt under
14          federal regulations from a new drug
15          application.
16 AR at 832.
17    14.  The Plan states that in order to receive
18 coverage for participation in a clinical trial (1) the
19 member's Personal Physician must obtain prior
20 authorization and (2) the member has to be accepted
21 into an approved clinical trial for cancer provided
22 that:
23      1.  the clinical trial has a therapeutic
24         intent and the Member's treating Physician
25         determines that participation in the
26         clinical trial has a meaningful potential
27         to benefit the Member with a therapeutic
28         intent; and

4

>     2.   the Member's treating Physician recommends
>          participation in the clinical trial; and
>     3.   the Hospital and/or Physician conducting
>          the clinical trial is a Plan Provider,
>          unless the protocol for the trial is not
>          available through a Plan Provider.

AR at 831.

15. Under the Plan, Blue Shield was responsible for the costs of the clinical trials and for determining coverage. AR at 359, 386 ("Decision making for cancer clinical trial coverage . . . is Blue Shield's responsibility and is **not delegated** to IPA/medical groups.") (emphasis in original).

16. Further, the Plan states that "Blue Shield shall have the power and discretionary authority to construe and interpret the provisions of the Contract, and determine eligibility to receive benefits under the Contract." AR at 857.

## CONCLUSIONS OF LAW

1. Liability for 29 U.S.C. § 1132(a)(1)(B) depends on the role the defendant played with respect to benefits claims. <u>Cyr v. Reliance Standard Life Ins. Co.</u>, 642 F.3d 1202, 1207 (9th Cir. 2011).

2. AMM did not have authority under the Plan to determine benefits for clinical trials, and therefore cannot be liable under 29 U.S.C. § 1132(a)(1)(B).

3. 29 U.S.C. § 1132(g)(1) provides that "[i]n any action under this subchapter ... by a participant,

5

beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."

4. In exercising its discretion, the district court should consider factors among others: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions. <u>Hummell v. S. E. Rykoff & Co.</u>, 634 F.2d 446, 453 (9th Cir. 1980).

5. The Court finds that Plaintiff did not act in bad faith by pursuing this Action and Defendant AMM is not entitled to attorneys' fees.

**IT IS SO ORDERED.**

DATED: December 11, 2012.

<u>RONALD S.W. LEW</u>
**HONORABLE RONALD S.W. LEW**
Senior, U.S. District Court Judge

6